**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DeMARCO DEON WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-CV-469-TCK-FHM |
| | ) | |
| CITY OF TULSA, and | ) | |
| JEFFREY MICHAEL HENDERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are the following pending motions: (1) City of Tulsa's Motion to Dismiss Complaint (Doc. 8) ("Motion to Dismiss"); (2) City of Tulsa's Motion to Strike Amended Complaint ("Motion to Strike") (Doc. 23); (3) City of Tulsa's Motion to Dismiss for Lack of Prosecution ("Motion for Sanction") (Doc. 28); (4) Plaintiff's Motion for Status Conference (Doc. 29); (5) City of Tulsa's Motion for Summary Judgment ("Motion for Summary Judgment") (Doc. 33); and the United States' Motion to Dismiss for Lack of Jurisdiction (Doc. 34).

## I.    Motion to Strike

On August 23, 2010, Plaintiff DeMarco Williams ("Williams") filed an Amended Complaint (Doc. 21) without leave of Court. Defendant the City of Tulsa ("City") moved to strike Williams' Amended Complaint as untimely under Federal Rule of Civil Procedure 15(a) ("Rule 15"). In response, Williams argued that the Amended Complaint was timely filed without leave of Court because the City had not yet filed a responsive pleading, citing a 1994 Tenth Circuit decision. (*See* Resp. to Mot. to Strike, Doc. 25.)

The current and applicable version of Rule 15 provides:

(a) Amendments Before Trial.

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
(A) 21 days after serving it, or
(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading *or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.*
(2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. 15(a) (emphasis added).  Williams' period for filing an Amended Complaint as a matter of course expired 21 days after December 13, 2011, the date the City filed its Motion to Dismiss. Williams filed his Amended Complaint on August 23, 2012, over six months after the statutory deadline for this type of amendment.

In addition, the Court set a May 30, 2012 deadline for any motions to join parties or amend pleadings in its Scheduling Order.  (*See* Doc. 19.)  Williams filed his Amended Complaint almost three months after this deadline without seeking leave of Court or otherwise showing cause for the untimeliness of the Amended Complaint.  Williams also failed to show cause in response to the Motion to Strike, arguing instead that the Amended Complaint was timely.  Accordingly, the Motion to Strike is granted, and this case is governed by the original Complaint filed July 28, 2011.  Based on this ruling, the United States is not a party to the litigation, and its pending motion to dismiss is denied as moot.

## II.    Motion for Sanction

On October 13, 2012, the City moved for sanctions against Williams pursuant to Federal Rules of Civil Procedure 37(d), 16(f), and/or 41(b) based on Williams' failure to prosecute.  The City argued that Williams' failure to participate in discovery – including failing to provide initial disclosures, a preliminary witness list, and failing to appear for his deposition – warranted the

sanction of dismissal.[1]  In response to the Motion for Sanction, Williams' counsel explained that the alleged failures were caused by counsel's father being hospitalized during this time.

The Court declines to dismiss the case as a sanction for lack of prosecution.  At this juncture in the proceedings, there are fully briefed and ripe dispositive motions.  Williams has participated in this briefing process and complied with other deadlines in the Scheduling Order, including submission of a proposed Pretrial Order.  Therefore, the Court declines to dismiss the case as a sanction for lack of prosecution and will instead rule on the merits of the City's pending motions.

**III.     Motion to Dismiss/Motion for Summary Judgment**

In response to the City's Motion to Dismiss, Williams attached evidence outside the pleadings, including trial transcripts and an internal memorandum of the Tulsa Police Department ("TPD").  (*See* Resp. to Mot. to Dismiss, Exs. 1-4.)  The Court elects to convert the Motion to Dismiss to one for summary judgment.  Ordinarily, this would require the Court to provide the City notice and an opportunity to present evidence.  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties.").  However, at this juncture, the City has filed a summary judgment motion, and such motion is fully ripe.  Both parties have had the opportunity to conduct discovery and present evidence, and the City will suffer no prejudice as a result of the Court's conversion of the Motion to Dismiss.  Therefore, the Court finds that notice is unnecessary.

---

[1]  The only sanction requested by the City was dismissal.

In response to the Motion for Summary Judgment, Williams did not attach any new evidence but instead relied upon evidence previously submitted and allegations in his Complaint.[2]  Because they involve similar arguments and evidence, the Court will simultaneously address the Motion to Dismiss, which has been converted to a motion for summary judgment, and the Motion for Summary Judgment.

### A.      Factual Background[3]

This case arises from alleged wrongful conduct of former TPD Officer Jeff Henderson ("Henderson") in connection with the searches, arrests, prosecutions, and six-year imprisonment of Williams.

### 1.      7/27/04 Search and Arrest

On July 27, 2004, Henderson obtained a search warrant for a residence located in the 3800 Block of South 128th East Avenue in Tulsa, Oklahoma, which is Williams' residence.  In the affidavit in support of the warrant request, Henderson asserted:

> YOUR AFFIANT FURTHER STATES THAT IN THE PAST 48 HOURS THE MENTIONED RCI HAS BEEN TO THE ABOVE DESCRIBED RESIDENCE AND OBSERVED A BLACK MALE, HEREAFTER REFERRED TO AS 'JOHN DOE' WHO WAS SELLING COCAINE OUT OF THIS RESIDENCE.   THE RCI

---

[2]  Plaintiff did not properly refute any of the City's facts as required by Rule 56 or the local rules of this Court, and all facts asserted in the City's Motion for Summary Judgment are deemed confessed.  (*See* Resp. to Mot. for Summ. J. 3 (citing seven "issues of fact" without citing any evidentiary support or otherwise disputing City's statement of facts).)  In order to further the interest of resolving disputes on the merits when possible, the Court has nonetheless considered all evidence submitted in response to the Motion to Dismiss and any other record evidence supporting Williams' claims in ruling upon the pending dispositive motions.

[3]  Due to Williams' evidentiary failures and continued reliance upon allegations in the Complaint, some of the background section contains alleged facts rather than facts supported by evidence.  Nonetheless, the Court sets forth Williams' alleged facts in this background section in order to fully explain Williams' arguments and theories of municipal liability.

> DIRECTED YOUR AFFIANT TO THE RESIDENCE AND POINTED IT OUT AS THE LOCATION FROM WHICH THE RCI OBSERVED THE COCAINE.  THE RCI TOLD YOUR AFFIANT THAT THE COCAINE WAS PACKAGED FOR SALE.  THE RCI TOLD YOUR AFFIANT THAT THE RCI HAS OBSERVED JOHN DOE CONDUCT DRUG TRANSACTION FROM THIS RESIDENCE. THE RCI DESCRIBED THE COCAINE TO YOUR AFFIANT AND THAT THE RCI (sic) IS POSITIVE THAT THE ITEMS SEEN IN THE RESIDENCE WERE INDEED COCAINE . . . . YOUR AFFIANT FURTHER STATES THAT JOHN DOE TOLD THE RCI THAT HE IS ONLY SELLING COCAINE AFTER THE HOURS OF 10 P.M.

(Compl. ¶ 16.)  Upon search of the residence, the police found drugs and a firearm.  Williams, who was at the residence, was arrested and transported to a police station.  Williams alleges that, after some negotiations with the police, he executed a blank "confession" that was later filled in by Henderson.  Williams was released on the same night of his arrest.  In connection with this July 2004 search and arrest, Williams alleges that Henderson (1) fabricated the existence of the informant mentioned in the affidavit, and (2) fabricated all or part of his confession, both in violation of his constitutional rights.

### 2.      10/5/04 Search and Arrest

On September 24, 2004, an arrest warrant was issued for Williams based on, *inter alia*, a finding of probable cause that Williams was trafficking illegal drugs.  On October 5, 2004, the police located Williams in his car on the street at 1300 North Denver Avenue, in Tulsa, Oklahoma.  Upon search of the car, the police discovered drugs, currency, and scales.  Williams was arrested and taken into custody.  Plaintiff does not allege any constitutional violations in connection with the 10/5/04 search and arrest, other than any problems caused by Henderson's initial illegal search and illegally obtained confession.

3.    *United States v. Williams*, Case No. 04-CR-167

Two days later, on October 7, 2004, a federal grand jury indicted Williams for drug trafficking

and gun charges.  *See United States v. Williams*, 04-CR-67-HDC ("04-CR-67").  On October 19,

2004, United States Magistrate Judge Sam Joyner conducted an arraignment, and Williams was

bound over for trial.  On November 3, 2004, a grand jury re-indicted Williams in a Superseding

Indictment alleging the same charges but omitting certain allegations regarding predicate convictions.

In the Superseding Indictment, Williams was charged with: (1) possession of crack cocaine with

intent to distribute; (2) possession of a firearm in furtherance of a drug trafficking crime; (3) being

a felon in possession of a firearm; and (4) possession of crack cocaine with intent to distribute.  The

first three counts related to contraband discovered during the residence search on July 27, 2004, and

the fourth count related to contraband discovered during the vehicle search on October 5, 2004.  On

November 18, 2004, United States Magistrate Judge Frank McCarthy conducted an arraignment, and

Plaintiff was bound over for trial on the Superseding Indictment.

During pretrial proceedings in 04-CR-67, Plaintiff requested *Brady* material regarding

Henderson and moved for a subpoena *duces tecum* of records of the TPD Internal Affairs Division

("IAD").  (*See* 04-CR-167, Doc. 74.)  Williams alleges that the City "denied [having] any material

impeaching Defendant Henderson" and that he was therefore "precluded from cross-examining him

about his disciplinary record."  (Compl. ¶ 32, 35.)  Williams further alleges that, during the

proceedings in 04-CR-167, Henderson testified falsely about the search of Williams' residence in

July 2004, Williams' seizure on that date, and Williams' seizure on the night of October 4, 2004.  (*Id.*

¶ 31.)

On October 25, 2005, almost one year after the Superseding Indictment was filed, Williams was convicted of all four counts in 04-CR-167. United States District Judge Dale Cook sentenced Williams to life imprisonment without the possibility of parole. The Tenth Circuit reversed the convictions on the basis of violations of the Speedy Trial Act, 18 U.S.C. § 3161 *et. seq.*, and ordered the district court to determine whether to dismiss the case with prejudice or without prejudice. *United States v. Williams*, 511 F.3d 1044 (10th Cir. 2007). Judge Cook dismissed the case without prejudice.

4.      *United States v. Williams*, Case No. 08-CR-21

On February 6, 2008, Plaintiff was indicted on the same four counts. *See United States v. Williams*, 08-CR-21-CVE ("08-CR-21"). This case was assigned to United States District Judge Claire Eagan. Again, Williams moved for the IAD file or for *in camera* production of such information. Again, Williams alleges that TPD and/or IAD denied having information in Henderson's personnel file that would impeach his credibility. Williams further alleges that Henderson committed perjury "during a motion hearing by stating unequivocally that there was no involvement by any attorney from any prosecuting authority when Williams was attempting to negotiate with the police." (Compl. ¶ 44.) On April 25, 2008, a jury convicted Williams of Counts 1, 3, and 4, and acquitted Williams of Count 2. Judge Eagan sentenced Williams to life imprisonment for each of the two counts of conviction. Williams' direct appeals and request for certiorari were denied.

In March 2010, the United States moved to vacate Williams' conviction and sentence in 08-CR-21 and set the matter for new trial. Judge Eagan granted the motion and set the matter for new trial. The United States elected not to retry the case and moved to dismiss the Indictment. Judge

Eagan dismissed the Indictment and ordered Williams to be released from prison on April 30, 2010.[4]

Williams had been in continuous custody since October 5, 2004.

5.    <u>United States v. Henderson</u>, Case No. 10-CR-117

On July 20, 2010, Henderson was indicted for more than 50 offenses, including drug charges,

firearms charges, civil rights charges, and perjury charges.  (*See United States v. Henderson*, 10-CR-

117-BDB ("10-CR-117"), Doc. 2.)  On August 25, 2011, Henderson was convicted of some of the

perjury and civil rights counts and was acquitted on the remaining counts.  (*See* 10-CR-117, Doc.

300.)

6.    <u>Williams v. Henderson, et al.</u>, Case No. 11-CV-469

On July 28, 2011, Williams brought the instant civil action against the City and Henderson,

asserting four causes of action.  In Count 1, Williams alleges that Henderson, acting in his individual

and official capacities, deprived Williams of his "Fourth Amendment" rights, in violation of 42

U.S.C. § 1983.   More specifically, Williams alleges that Henderson (1) fabricated the "RCI"

referenced in the July 2004 affidavit; (2) falsified the alleged "confession" obtained on the night of

the July 2004 arrest; and (3) testified falsely during both of Williams' criminal proceedings.[5]

In Count 2, Williams asserts a § 1983 municipal liability claim against the City.  Williams

alleges that the City, by and through TPD, "has established a policy, practice, pattern, and/or custom

of allowing its police officers to deprive citizens of their constitutional rights.  Alternatively, policy

---

[4] These facts are set forth in an Opinion and Order entered by Judge Eagan in 08-CR-21 on February 7, 2011. (*See* 08-CR-21, Doc. 89.)

[5] As discussed *infra* Part III.C, the Court construes these allegations as implicating both the Fourth Amendment and the substantive component of the Due Process Clause of the Fourteenth Amendment.

8

makers for the City of Tulsa, through willful blindness, caused a policy, practice, pattern, and/or custom of allowing its police officers to deprive citizens of their constitutional rights." (Compl. ¶ 57.)

In Count 3, Williams asserts a state law negligence claim against the City based upon the negligent acts of Henderson. In Count 4, Williams asserts a state law negligence claim against the City based on its own (1) inadequate training regarding search warrants and confessions, and (2) failure to supervise Henderson. Both claims arise under the Oklahoma Government Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, § 151, *et seq.*

In the two dispositive motions pending before the Court, the City argues that it is entitled to judgment in its favor because: (1) Williams's § 1983 claims are barred by the statute of limitations; (2) Williams cannot establish municipal liability under § 1983; and (3) Williams cannot establish the notice requirement for the OGTCA claims.[6] The City also moved for judgment in its favor on the official capacity claims against Henderson.

### B.      Rule 56 Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but

---

[6] The City made several other arguments in its two dispositive motions. However, the City is entitled to judgment on all claims based on the above arguments, and the Court finds no need to reach the remaining arguments.

must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The party seeking to overcome a motion for summary judgment must also make a showing sufficient

to establish the existence of those elements essential to that party's case.  *See Celotex Corp. v.

Catrett*, 477 U.S. 317, 323-33 (1986).

### C.        § 1983 - Statute of Limitations

"A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. §

1983."  *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  "The statute of limitations

is drawn from the personal-injury statute of the state in which the federal district court sits."  *Id.*

"Federal law, however, determines the date on which the claim accrues and the limitations period

starts to run."  *Id.*  "State law governs any tolling of that period, except that federal law might also

allow additional equitable tolling in rare circumstances."  *Id.* (internal citations omitted).

Oklahoma's personal injury statute contains a two-year statute of limitations, *see* Okla. Stat.

tit. 12, § 95(A)(3); thus, Williams had two years from the accrual of his § 1983 claims to file suit.

The next question is when Williams' claim accrued.  In *Mondragon v. Thompson*, 519 F.3d 1078,

1082 (10th Cir. 2008), the Tenth Circuit addressed the issue of when a plaintiff's § 1983 claim

accrued where (1) a New Mexico Department of Corrections employee convinced a co-worker to

fabricate an arrest warrant for the plaintiff; (2) the plaintiff was arrested and jailed on the basis of the

forged warrant; (3) the plaintiff had some type of hearing relevant to his detention, which did not

result in his release; (4) the plaintiff filed a writ of habeas corpus, which was granted; and (5) the

plaintiff was released after being jailed for approximately three months.  The plaintiff filed suit within

three years of his release date.  The district court held that the plaintiff's § 1983 claims were time-

barred because his claims necessarily accrued sometime before his release date, rendering his claims outside New Mexico's three-year statute of limitations.

The Tenth Circuit reversed, holding that "at least part and possibly all of [the plaintiff's] suit is likely to be timely" but "that the record is inadequate for us to make a determination." *Id.* at 1081. The court reasoned that "a plaintiff who claims that the government unconstitutionally imprisoned him has at least two potential constitutional claims" – one arising under the Fourth Amendment and one arising under the procedural component of the Due Process Clause of the Fourteenth Amendment. *See id.* "If he has been imprisoned *without legal process*, he has a claim under the Fourth Amendment analogous to a tort claim for false arrest or false imprisonment." *Id.* (emphasis added). In contrast, "[i]f he has been imprisoned pursuant to *legal but wrongful process*, he has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution." *Id.* (emphasis added). The court further reasoned that a Fourth Amendment violation can become a Fourteenth Amendment violation following the detainee's first receipt of legal process. *Id.* (explaining that an initial seizure is governed by the Fourth Amendment but that, at some point following arrest and certainly by the time of trial, "the constitutional analysis shifts to the Due Process Clause") (citing its prior decision in *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004), and stating that the Supreme Court left this question unanswered in its seminal decision in *Wallace v. Kato*, 549 U.S. 384 (2007)).[7]

---

[7] The City relies upon *Wallace v. Kato*, 549 U.S. 384 (10th Cir. 2007) (holding that a false arrest claim accrued upon arraignment and was time-barred), without discussion of *Mondragon*. However, *Mondragon* was decided after *Wallace* and decides certain questions left unanswered in *Wallace*. Such questions are also presented here, and the Court has followed the specific accrual guidelines set forth in *Mondragon*.

The Tenth Circuit summarized its holding by setting forth the following accrual rules, which the Court has endeavored to follow in this case. "The period of time between an unlawful arrest and the institution of legal process forms one constitutional claim arising under the Fourth Amendment." *Id.* at 1083. This type of Fourth Amendment claim "accrues when the plaintiff is released or legal process is instituted justifying that imprisonment." *Id.* "Legal process" includes being "'bound over by a magistrate or arraigned on charges.'" *See id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091, 1096 (2007)). In contrast, the "period of time between the institution of that process and its favorable termination – through acquittal, habeas corpus, voluntary dismissal, etc. – forms a second claim, arising under the Due Process Clause." *Id.* This type of Fourteenth Amendment claim "accrues, at the earliest, when favorable termination occurs." *Id.* Applying the rules to that case, the court reasoned that it could "not apply these two settled rules to [the plaintiff's] complaint because we do not know if he was ever given legal process justifying his detention." The court stated:

> The record does not reveal what kind of hearing he received in August or what its legal status was, and we do not decide (although we doubt) that a forged arrest warrant functions as legal process that terminates a Fourth Amendment claim and starts a due process claim. If Mr. Mondragón never received legal process justifying his imprisonment, then he has a straightforward claim under the Fourth Amendment for his entire time in jail. Such a claim does not accrue until the false imprisonment ends. On the other hand, if Mr. Mondragón did at some point receive legal process for his imprisonment (as a result either of the arrest warrant or of the mysterious mid-August hearing), he has a potential due process claim from that period until his release. This claim does not accrue until the process terminates in his favor, which presumably is the date his habeas corpus petition was granted. These accrual dates may be within the limitations period.

*Id.* at 1083-84 (footnotes omitted). Thus, the court implied that, if the August hearing was legal process that terminated the Fourth Amendment violation and started the Due Process Clause violation, the plaintiff's claim for any period of detention following legal process was timely filed.

12

In this case, Williams argues that all of his claims accrued on his release date in April 2010,[8] rendering his Complaint timely filed on July 28, 2011.  The City argues that: (1) Williams' claims arise exclusively under the Fourth Amendment; (2) Williams' claims accrued on the arraignment dates, *i.e.*, his first receipt of legal process, for each of his two criminal proceedings: (a) November 18, 2004 in 04-CR-167, and (b) March 10, 2008 in 08-CR-21; and (3) Williams' Complaint was filed more than two years after the last possible accrual date on March 10, 2008.

Despite Williams' failure to make this argument, the Court construes the Complaint as alleging § 1983 violations against the City arising under both the Fourth Amendment and Due Process Clause of the Fourteenth Amendment.  Williams seeks compensation for the period of his allegedly wrongful imprisonment from October 5, 2004 to April 30, 2010.  (*See* Compl. ¶ 13 ("This is a federal civil rights action against the Defendants arising from Williams' wrongful arrest and subsequent imprisonment for [] almost six years, stretching from October 5, 2004 through April 30, 2010.").)  Despite Williams' exclusive use of the term "Fourth Amendment" in the Complaint, the Court finds that Williams' claim at least partially arises under the procedural component of the Due Process Clause of the Fourteenth Amendment.  This is because certain spans of imprisonment for which Williams seeks to recover occurred after his arraignment dates, *i.e.*, the receipt of legal (but allegedly wrongful) process.  *See Mondragon*, 519 F.3d at 1083-84 (reasoning that, if a plaintiff who was allegedly arrested based upon a fabricated arrest warrant "did at some point receive legal process

---

[8]  In his Complaint, Plaintiff alleges that his release date was April 30, 2010.  This is supported by the record in 08-CR-21.  (*See* 08-CR-21, Doc. 73).  In one brief, Plaintiff alleged that the "operative date" for accrual was April 8, 2010.  (*See* Resp. to Mot. to Dismiss 14 ("In this case the operative date is April 8, 2010.").)  There is no record evidence in this case or public filing in 08-CR-21 that reveals what event occurred on April 8, 2010.  Whether the proper date is April 8 or April 30 makes no difference to the outcome.

for his imprisonment . . ., he has a potential due process claim from that period until his release").

Here, Williams alleges that an illegally obtained confession and illegally obtained evidence, both

caused by the City's deliberate indifference, led to his arrest and ultimate convictions and

imprisonment.  Assuming this claim for wrongful imprisonment began as a Fourth Amendment claim,

it subsequently became a Fourteenth Amendment claim that did not accrue until Williams' release

in April 2010.  *See id.*[9]   Further, Williams' allegations against the City include the deliberate non-

disclosure of *Brady* material during both criminal proceedings, which allegedly ratified Henderson's

wrongful conduct.  Such claim would seem to arise under the Due Process Clause of the Fourteenth

Amendment.

Based on this construction of Plaintiffs' claims, the Court concludes that Williams' § 1983

claim against the City is not *entirely* time-barred.  Williams' Fourth Amendment claims for any

periods of imprisonment prior to his receipt of legal process, *i.e.*, his arraignment dates for that

particular Indictment, are time-barred because they accrued, at the latest, on March 10, 2008.

However, Williams' Fourteenth Amendment claims for periods of imprisonment following his

arraignments – whether based upon Fourth Amendment violations that became Fourteenth

Amendment violations or actual Fourteenth Amendment violations – accrued on his release date in

April 2010 and were therefore timely filed.  *See United States v. Barnes*, 10-CV-507-TDL (Doc. 92)

(reaching same conclusion in case raising similar allegations against Henderson and holding that any

claims arising under the Fourteenth Amendment were not time-barred but that any "false arrest"

claims were time-barred).

---

[9]  In this case, there is no dispute that the arraignments held before Judge Joyner and
Judge McCarthy would qualify as legal process justifying his imprisonment, although Williams
alleges that such process was wrongful because it was tainted by Henderson's fabrications.

**D.**     **§ 1983 - Municipal Liability**

For all timely claims, the Court must analyze whether Williams' evidence is sufficient to survive summary judgment.  A municipality or other local government may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, __ U.S. ___, 131 S.Ct. 1350, 1359 (2011). A municipality may only be held liable for its own illegal acts and may not be held vicariously liable for its employees' actions.  *Id.*

In order to impose liability against a local government, a plaintiff must prove that actions taken pursuant to "official municipal policy" caused his injury.  *Id.*  Ordinarily, official municipal policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.*  In addition, in limited circumstances, the decision "not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Id.*  However, "a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and a failure to train must amount to "deliberate indifference" to citizen's rights.

The deliberate indifference standard is stringent and requires proof that a municipal actor disregarded a known or obvious consequence of his action.  *Id.* at 1360.  "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."  *Id.*  The municipality's "policy of inaction,"

following notice that its program will cause constitutional violations, is the functional equivalent of a decision by the municipality to violate the Constitution.  *See id.*

In this case, Williams seeks to impose liability on the City based on three "deliberate indifference" theories: (1) the absence or inadequacy of specific TPD policies and/or training regarding use of informant testimony; (2) the absence or inadequacy of specific TPD policies and/or training regarding obtaining written confessions; and (3) certain actions by TPD that amounted to "ratification" of Henderson's conduct.  (*See* Resp. to Mot. to Dismiss 4-5 (arguing deliberate indifference based upon inadequate polices to prevent Henderson's wrongful conduct and "ratification" of Henderson's wrongful conduct); Resp. to Mot. for Summ. J. 9 (making similar or identical arguments to those made at dismissal stage).)[10]

          1.     Policies/Practices

The City moved for summary judgment based upon Williams' failure to show that TPD had actual or constructive notice that omissions in its policies or practices regarding use of informant testimony and/or obtaining confessions had caused its officers to violate citizens' constitutional

---

[10]  The Complaint also potentially alleges a more direct municipal liability theory based upon TPD and/or IAD's alleged  non-disclosure of *Brady* material to prosecutors in 04-CR-167 and/or 08-CR-21.  (*See* Compl. ¶¶ 32, 35.)  However, in his response to the dispositive motions, Williams relied exclusively upon a theory of "ratification" related to this non-disclosure – namely, that the non-disclosure demonstrates deliberate indifference to Henderson's prior wrongful conduct.  Further, Williams failed to identify any actor within TPD or IAD that allegedly withheld the information.  *See, e.g., Porter v. White*, 483 F.3d 1294, 1306-07 (11th Cir. 2007) (plaintiff alleged in § 1983 action that law enforcement investigator violated his due process right to a fair trial by failing to disclose police reports to the prosecution).  Thus, the Court has considered whether non-disclosure demonstrates deliberate indifference to Henderson's conduct, rather than as a stand-alone basis for municipal liability. Regardless, Williams' insufficient evidence of any actual non-disclosure, *see infra* Part III.D.2.b, would also be fatal to this more direct theory of liability against the City.

rights.  Williams did not present any specific argument or evidence in response to this notice argument, and the City's arguments are deemed confessed.  Further, the Court independently concludes that summary judgment is proper.  In the Complaint, Williams contends that the City had notice of a "pattern and practice" of constitutional violations based upon the events alleged in the Indictment in 10-CR-117.  However, the earliest instance of misconduct alleged in the 10-CR-117 Indictment occurred *after* Henderson's allegedly illegal conduct in 2004.  All constitutional violations alleged in 10-CR-117, which are alleged as notice in this case, occurred from 2005-2010.  (*See* Compl. ¶ 58 (identifying 53 instances evidencing a "pattern and practice" of unconstitutional conduct by TPD officers, as set forth in 10-CR-117 Indictment, which began in 2005).)  The City cannot be deemed deliberately indifferent (and therefore causally linked) to constitutional violations committed by Henderson in 2004, when the first instance in the alleged "pattern and practice" of similar violations by Henderson occurred after that time.[11]  Thus, the City is entitled to summary judgment based on Williams' inability to establish that TPD had notice of known and obvious risks associated with its policies and practices on using informants and/or obtaining confessions on the dates of the allegedly wrongful search (July 2004), confession (October 2004), or arrest (October 2004).

2.    Ratification

Plaintiff cited two cases in support of his "ratification" theory of municipal liability.  The two Eastern District of New York cases cited by Williams, and Second Circuit decisions cited therein, generally hold that a "persistent failure to discipline subordinates who violate civil rights could give

---

[11]   Williams was re-indicted following dismissal of his first conviction.  At the time of the second Indictment in 2008, some of the violations alleged in Paragraph 58 of the Complaint had occurred.  However, even assuming the City had notice of these violations, the question presented as to the "policy and practice" deliberate indifference theory is whether the City can be causally linked to an illegal search warrant and confession obtained by Henderson in 2004.

17

rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2nd Cir. 1983); *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) (same); *Davis v. Lynbrook Police Dept.*, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002) ("A plaintiff can also prove such deliberate indifference by showing "that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights."). Thus, the "ratification" discussed in Williams' three cited cases is that, if a municipality has notice of an employee's past commission of civil rights violations but fails to stop him from committing similar violations in the future, the municipality "ratifies" the conduct and can be deemed a direct cause of the § 1983 violation at issue. *See, e.g., Batista*, 702 F.2d at 397 (finding that "official policy or custom" pleading requirement was satisfied where plaintiff alleged that municipality "repeatedly condoned and even rewarded police conduct that had been adjudicated to be in violation of civil rights"); *Davis*, 224 F. Supp. 2d at 479 (denying summary judgment because "a reasonable jury could infer from these repeated complaints [regarding a particular officer] an obvious need for more or better supervision to protect against constitutional violations").

The Court has had difficulty applying Williams' argument and evidence to the law cited by him. Williams' argument appears to be that TPD "ratified" Henderson's alleged constitutional violations by subsequently withholding *Brady* material from prosecutors, not that TPD ratified Henderson's conduct by failing to discipline him for prior misconduct. (*See* Resp. to Mot. for Summ. J. 5 (arguing that TPD's "[w]hitewashing the results of and stonewalling efforts to obtain the contents of internal affairs investigations ratified the unconstitutional conduct of Henderson").) Williams' cited evidence in support of this ratification theory consists of: (1) a January 16, 2002 memo to

18

Henderson from TPD Chief Ronald Palmer suspending Henderson for two days for vindicating a personal dispute at a bar while on duty and failing to inform dispatch of his whereabouts ("1/16/02 Memo"); (2) a December 18, 2000 "Summary Report" in IA Case 00-199, which is the summary of an investigation of a complaint lodged against Henderson and two other officers ("12/18/00 Summary"); and (3) a pleading filed on July 18, 2011 in 10-CR-117 entitled "Second Rule 404(b) Notice as to Defendant Jeff Henderson," which states that Henderson has been the subject of 33 separate IAD complaints since 1998 ("7/18/11 Filing").  This evidence purportedly proves that the City withheld *Brady* material during both trials.  Out of an abundance of caution, the Court will address both "failure to discipline" and "withholding information" ratification theories of municipal liability.

### a.   Failure to Discipline

If and to the extent Williams claims that TPD's failure to discipline Henderson was the moving force behind Williams' alleged constitutional violations, this claim must fail.  First, with respect to the 1/16/02 Memo, Henderson was indeed disciplined.  Further, the conduct described did not involve informants or confessions and bears no relation to the alleged constitutional violations at issue.  This evidence does not assist Williams in defeating the City's motion for summary judgment.

Second, with respect to the 12/18/00 Summary, this IA investigation involved a complaint regarding Henderson's use of OC spray through the crack of a motel door in order to gain entry.  In addition to facts regarding excessive use of force, the summary includes a section on whether Henderson "violate[d] Rule 8, Duty to be Truthful and Obedient by entering false information into a Probable Cause Affidavit, an offense report[,] and his Internal Affairs interview?" (*See* 04-CR-167,

Doc. 74, at Ex B.)  Thus, it touches upon the subject of this case – namely, being truthful in probable cause affidavits.  The summary indicates that Henderson potentially omitted information from a probable cause affidavit signed after the motel room incident.  Specifically, Henderson possibly omitted the presence of an individual named Fred Stevens who, according to Henderson's IA interview statement, came to the motel to buy cocaine from the suspected occupant of the motel room.  Henderson explained this omission by stating that he had not obtained enough information from Stevens to list him as a witness and because Stevens left the scene before witnessing any criminal activity set forth in the probable cause affidavit.

This summary does not demonstrate that TPD exhibited deliberate indifference to a known or obvious risk that Henderson or others would fabricate search warrants and/or confessions.  Instead, it simply demonstrates that an excessive force investigation occurred and that such investigation revealed Henderson's possible omission of information from a subsequent affidavit.  Williams has presented no evidence as to what occurred following this investigation or whether Henderson was disciplined.  Thus, it is not evidence of "ratification" or failing to sufficiently discipline Henderson for a similar violation as those allegedly committed in this case.[12]

Finally, with respect to the 7/18/11 Filing, this also does not constitute sufficient evidence to overcome the City's motions.  The sheer number of IA investigations, some of which occurred prior to 2004, indicates a possible problem with the City's discipline of Henderson.  However, this is the

_____

[12]  Plaintiff does not appear to contend that these two 2002 documents are sufficient to put the City on notice of a "pattern and practice" of constitutional violations by Henderson, as such documents were discussed only in conjunction with Plaintiff's "ratification" theory. However, for the same reasons discussed above, the Court finds that these documents would also be insufficient to create a question of fact on Plaintiffs' more general "pattern and practice" theory discussed *supra* Part III.D.1.

summary judgment stage of proceedings.  Williams must demonstrate that a question of fact exists as to whether the City exhibited deliberate indifference to the precise and specific constitutional violations allegedly committed in this case.  Williams had an opportunity to conduct discovery on these issues and present the Court with all evidence surrounding any investigations of Henderson occurring prior to 2004 that would assist Williams in surviving summary judgment.  Williams has failed to do so, and the case cannot proceed to trial based upon the sheer number of investigations, without further evidence about their date, subject matter, or outcome.  Nor is the Court certain that the 7/18/11 Filing is sufficient Rule 56 evidence; it is certainly not the best evidence, such as testimony from an IAD official regarding the number of relevant investigations of Henderson and their outcomes.  In sum, the three pieces of evidence submitted in support of the "ratification" theory are either unrelated in time or type to the alleged constitutional violations in this case or are too generalized to dispute the City's assertion that it did not act with deliberate indifference.

### b.    Withholding *Brady* Material

To the extent Williams contends that TPD "ratified" Henderson's alleged constitutional violations rights by withholding or "whitewashing" information during either of Williams' criminal trial, this claim also fails for lack of supporting evidence.  Assuming this unique "ratification" theory is supported by law, Williams' three pieces of supporting evidence do not create a genuine question of fact as to whether relevant information was indeed withheld during either criminal trial.  The 1/16/02 Memo and 12/18/00 Summary were possessed by defense counsel prior to the first criminal trial, were attached to Williams' motion for Subpoena Duces Tecum, and do not evidence any withholding of *Brady* material.  (*See* 04-CR-67, Doc. 74, at Exs. A and B.) The 7/18/11 Filing in Henderson's criminal case, which references 33 investigations of Henderson occurring since 1998,

certainly raises the question of whether defense counsel received everything in IAD's possession in 2004 and/or in 2008.  Again, however, this case is at the summary judgment stage, and Williams must present evidence creating a genuine question of fact for trial.  Williams had opportunity to discover, identify, and present specific undisclosed *Brady* material relevant to this case but has failed to do so.  It is not the Court's duty to comb the record of Henderson's criminal proceedings or otherwise search for evidence in support of Williams' claims.  Therefore, this "ratification" theory also fails.

### E.    Official Capacity Claims Against Henderson

Claims against a governmental official in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v,. Graham*, 473 U.S. 159, 165-66 (1985).  There is no longer a need to bring official-capacity actions against local government officials because local government units can be sued directly for damages and declaratory and injunctive relief.  *See id.* at 167 n.14.  In cases where both the governmental entity and official are sued, any official capacity claims are redundant with those against the entity and therefore subject to dismissal.  *See Storie v. Ind. Sch. Dist., No. 13*, 834 F. Supp. 2d 1305, 1307-08 (E.D. Okla. 2011) (dismissing official capacity claims against principal because they were redundant with claims against school district); *Moore v. Bd. of Cty. Comm'rs of Cty. of Leavenworth*, 470 F. Supp. 2d 1237, 1256 (D. Kan. 2007)  (granting summary judgment in favor of sheriff on official capacity claims because they were redundant with claims asserted against county itself).  All official capacity claims against Henderson are redundant with claims against the City, and the Court grants judgment in favor of Henderson on such claims.

### F.      OGTCA Claims - Counts 3 and 4

A person asserting a claim against a political subdivision under the OGTCA must file a claim in writing with the office of the clerk of the governing body within one year of the date the loss occurs.  *See* Okla. Stat. tit. 51, § 156(B), (D).  A person may initiate a lawsuit against the political subdivision only if the claim has been denied in whole or in part, *see id.* § 157(A), and the lawsuit must be initiated within 180 days following denial of the claim.  *Id.* § 157(B).  Thus, when an individual brings suit under the OGTCA, he must allege and ultimately prove compliance with the OGTCA's notice provisions.  *Simington v. Parker*, 250 P.3d 351, 358 (Okla. Civ. App. 2011) (explaining that "suit against a governmental entity under the GTCA must be based upon the claimant presenting written notice of a claim within one year of the date the loss occurs" and that "[a] petition must factually allege compliance with the GTCA's notice provisions").

The City moved for dismissal and then summary judgment based upon Williams' failure to allege and/or demonstrate compliance with the OGTCA's notice provisions.  Williams failed to respond to this argument in his response to the motion to dismiss or his response to the motion for summary judgment.  Therefore, Williams has failed to present any evidence of an essential element of both OGTCA claims, and the City is entitled to summary judgment on Counts 3 and 4.

## IV.    Conclusion

The City of Tulsa's Motion to Strike Amended Complaint (Doc. 23) is GRANTED, and the Amended Complaint (Doc. 21) is STRICKEN.   The United States' Motion to Dismiss for Lack of Jurisdiction (Doc. 34) is MOOT because the United States is not a party to the litigation.

The City of Tulsa's Motion to Dismiss for Lack of Prosecution (Doc. 28) is DENIED.  The City of Tulsa's Motion to Dismiss Complaint, which the Court converted to a motion for summary

judgment (Doc. 8), and the City of Tulsa's Motion for Summary Judgment (Doc. 33) are GRANTED. The City is granted judgment as to all claims, and Henderson is granted judgment as to all official capacity claims.  Plaintiff's Motion for Status Conference (Doc. 29) is DENIED.

The only remaining claim is Count 1 asserted against Henderson in his individual capacity. To the Court's knowledge, Henderson has failed to enter an appearance or otherwise respond to the allegations against him.  Williams is ordered to file a proposal of how to proceed against Henderson or make any other request for relief against Henderson no later than Tuesday, January 29, 2013.  The pretrial conference, trial, and any other remaining deadlines are hereby stricken.

SO ORDERED this 22nd day of January, 2013.


**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**